**Hubert D. RAINEY, Appellant,**

v.

**MISSOURI UTILITIES COMPANY, a corporation, Local Union 702 of the International Brotherhood of Electrical Workers, and Donald L. Keith, Appellees.**

**No. 78–1584.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1979.

Decided April 5, 1979.

stricken. Its notice of appeal is from the entire judgment, which included the award of attorneys' fees.

James F. Waltz of Oliver, Oliver & Jones, Cape Garardeau, Mo., for appellee, Missouri Utilities Co.

Before ROSS and McMILLIAN, Circuit Judges, and VAN SICKLE, District Judge.*

VAN SICKLE, District Judge.

This matter came up on separate motions to dismiss, supported by affidavits. The trial court applied Rule 12(c) of the Federal Rules of Civil Procedure, and treated the motions as motions for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, the court dismissed the plaintiff's complaint, which claimed relief under 29 U.S.C. § 301, after a finding that there was no genuine issue as to any material fact, and that the defendants were entitled to judgment as a matter of law. The judgment of dismissal was appealed.

The plaintiff, Hubert D. Rainey, had been employed by the defendant Missouri Utilities Company, since February, 1957. He was, throughout that time, a spray and miscellaneous utility man. On July 18, 1975, he was laid off in the course of a reduction in force and was subsequently discharged without severance pay. The bargaining agreements relevant to this matter were those of May 1, 1973, and April 1, 1975.

January 1, 1975, Missouri Utilities Company gave notice to Mr. Rainey, who was then under 62 years of age, that his job was going to be terminated as of July 18, 1975. The reason for the termination was adverse economic conditions.

Within and about this time, the Missouri Utilities Company and the defendant, Local Union 702 of the International Brotherhood of Electrical Workers, discussed the forthcoming problem of reduction in strength, and evolved a series of options to be made available to persons laid off, and confirmed the options available as being:

Stephen L. Taylor of Gilmore, Gilmore & Taylor, Sikeston, Mo., for appellant.

Charles A. Werner of Schuchat, Cook & Werner, St. Louis, Mo., for appellee, Christopher T. Hexter, St. Louis, Mo., on brief.

* The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation.

1.  Take early retirement if certain age requirements were met.[1]
2.  "Bump" employees of less seniority, if they were qualified to assume the position immediately.[2]
3.  Be laid off without severance pay but retain seniority and rehiring rights.[3]
4.  Accept a lump sum severance payment and forfeit seniority and rehiring rights.[4]

And, of course, there was an additional option of voluntary resignation, which would cause forfeiture of seniority and rehiring rights.[5]

These options were exercisable until the scheduled termination date of July 18, 1975, but as of that date any selection by an employee would be final and binding on the parties.

Mr. Rainey first attempted to "bump" in to a meter reading job in Sikeston, Missouri. He was transferred to that position several weeks before his termination date. But after a short time he voluntarily withdrew from that job for physical reasons which no one questioned. Next he attempted to "bump up" to a higher paying job as a water plant operator. To that end he took some training and qualified as a Class D water plant operator. Missouri Utilities Company officers informed him that he was not qualified and able to take over the job and therefore his effort to "bump up" was denied. Mr. Rainey elected to "grieve" this decision. He filed a grievance report on July 23, 1975, under the collective bargaining agreement. That grievance was heard on December 18, 1975, before an arbitrator.[6]

February 18, 1976, the arbitrator found that "the grievant did not have the ability and qualifications to fill immediately the job of water plant operator at the time of his layoff on July 18, 1975."

The union sent a copy of the arbitrator's decision to Mr. Rainey. The local business agent of the union, Mr. Keith, elected not to carry the grievance beyond the arbitrator's adverse award, and Mr. Rainey did not resist Mr. Keith's decision.

Instead, on March 1, 1976, Mr. Rainey wrote to Missouri Utilities Company that:

I now request final separation from the company with severance pay.

On March 16, 1976, the company responded:

The company accepts your request for final separation which you now desire. Unfortunately, a corresponding right to severance pay does not exist on a voluntary termination. . . . Accordingly, your request for severance pay must be denied.

Mr. Rainey thereafter took no action either to appeal the decision of the arbitrator, or to file a grievance against his union business agent for his failure to prosecute an appeal. Instead, on February 28, 1978, he filed an action in the United States District Court alleging an entitlement to relief under 29 U.S.C. § 185 (Labor Management Act of 1947).

The gravamen of his charge is that there has been a:

Violation of Contract[s] between an employer and a labor organization representing employees . . .. 29 U.S.C. § 185(a).

The action challenges the company's refusal to award severance pay, and also the failure of the union to initiate grievance procedures contesting the company's decision not to award severance pay.

The collective bargaining agreement provided the following mechanism for resolving disputes:

1.  Article IX § 9.33 May 1, 1973 Contract
    Article IX § 9.18 April 1, 1975 Contract
2.  Article II § 2.01 May 1, 1973 Contract
    Article II § 2.01 April 1, 1975 Contract
3.  Article IX § 9.31 May 1, 1973 Contract
    Article IX § 9.18 April 1, 1975 Contract
4.  Article IX § 9.31 May 1, 1973 Contract
    Article IX § 9.18 April 1, 1975 Contract

5.  Article IX § 9.32 May 1, 1973 Contract
    Article IX § 9.19 April 1, 1975 Contract
6.  While the Union prepared the grievance, organized the evidence, presented the case, and used the firm of Schuchat, Cook & Werner, lawyers, to do so, Mr. Rainey also employed a lawyer, Mr. Edward L. Downs, who attended the arbitration proceedings.

Sec. 3.01 The Company agrees to meet and to treat with the duly accredited officers and committees of the Union in the following manner on differences that may arise between the Company and the Union provided, however, that the grievance procedure must be started within five (5) days after the alleged contract violation.

Sec. 3.02 The local representative of the employees affected shall first deal through department heads to which the employees involved are responsible.

Sec. 3.03 In case of failure to agree in that manner, then any complaint not so adjusted shall be reduced to writing within five (5) days, will be referred to the Business Manager of the Business Representative of the Union, who may be accompanied by a committee of employees, and shall endeavor to adjust the matter with the District Manager or Division Manager of the Company.[7]

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), was one of a pair of cases considered by the Supreme Court. It arose out of a refusal by Warrior & Gulf Navigation Co. to arbitrate a decision by the employer to contract out certain phases of work, and to lay off the employees thus supplemented. The union sued to compel use of the arbitration clause and the District Court granted respondent's motion to dismiss the complaint. 168 F.Supp. 702. The Fifth Circuit affirmed. 269 F.2d 633. The Supreme Court reversed. 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

The arbitration clause was a "standard" clause. It generally fell into the pattern of the clause in this case. In particular it did not contain certain language found in the clause of *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra*, companion case of *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The language we refer to is:

*Any* dispute . . . *may* be submitted.

7. Article III § 3.01, 3.02, 3.03 May 1, 1973 Contract

The Supreme Court decision which compelled the employer to go to arbitration before the matter could be presented to the court on its merits turned, not on the language of the clause, but on the nature and function of arbitration under the bargaining agreement. The Supreme Court said at page 578, 80 S.Ct. at page 1351:

The present federal policy is to promote industrial stabilization through the collective bargaining agreement. . . . A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement.

Thus the run of arbitration cases, illustrated by *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, becomes irrelevant to our problem. There the choice is between the adjudication of cases or controversies in courts with established procedures or even special statutory safeguards on the one hand and the settlement of them in the more informal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under any ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself.

The Supreme Court then, 363 U.S. at page 584, 80 S.Ct. at page 1354, articulated this standard:

In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.

Article III § 3.01, 3.02, 3.03 April 1, 1975 Contract

■ We conclude that Rainey's dispute with his employer was subject to the dispute mechanism agreed to by his union and his employer under their contract. It is Rainey's further contention, however, that he should be allowed to bypass this grievance procedure, and pursue this federal court action, because the union breached its duty of fair representation to him in failing to initiate the grievance process.

■ The plaintiff-appellant Rainey is defending against a summary judgment granted in appellee's favor. The district court was required, and we are required, to view the case in the light most favorable to plaintiff Rainey and to give him the benefit of all reasonable inferences favorable to him. *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978).

Rainey, in his affidavit submitted to the district court, averred that "[t]he Union, through its business representative Donald L. Keith, failed to take any steps to present this affiant's grievances although often requested to do so by this affiant." (A. 79). This averment is directly controverted by Keith's affidavit,[8] thus raising a fact issue as to whether a request was made, and whether the grievance was handled in a perfunctory and arbitrary manner by Keith contrary to the union's duty of fair representation.[9] *See generally Smith v. Hussman Refrigerator Co.*, No. 78–1034 (8th Cir. Jan. 3, 1979).

■ However, we do not need to resolve this factual dispute or resolve the claim that Keith, on the union's behalf, unfairly represented union member Rainey. Assuming Keith unfairly refused to file a grievance, it is undisputed that Rainey took no steps to appeal the union official's decision pursuant to internal union remedies. Clearly, the union's constitution provided that its members must do so:

The Union Constitution provided:

Sec. 1. Any member may be penalized for committing any one or more of the following offenses.

(1) Resorting to the courts for redress of any injustice which he may believe has been done him by the I.B.E.W. or any of its local unions without first making use of . . . any appeal . . . from any decision against him.

Sec. 12. Any member who claims an injustice has been done him by any L.U. or trial board, or by an Railroad Council, may appeal to the I.V.P. any time within forty-five (45) days after the date of the action complained of.[10]

In a case involving this same union constitution, the trial judge concluded that the language above recited is mandatory in nature.[11]

The Eighth Circuit has already held with the general rule that a plaintiff must exhaust all of the union's available internal remedies, or *show an adequate reason for his failure to do so*, before he seeks relief against his union in the federal courts. *Neal v. System Board of Adjustment (Missouri Pacific Railroad)*, 348 F.2d 722 (8th Cir. 1965).

Rainey makes no allegation that he in fact did pursue intra-union remedies, or

---

8. Union representative Keith states:

Rainey did not file a grievance protesting the Company's decision denying his requested severance pay; nor did Rainey request of Donald L. Keith that he or Local 702, IBEW file a grievance on Rainey's behalf with respect to the Company's decision in denying Rainey his severance pay. (A. 47).

9. The effect of the contractual provision giving the union exclusive control over the grievance procedure is to deprive the individual of his ability to enforce the contract on his own behalf. The union, having deprived the individual of his ability to enforce his rights, has a special obligation to act on his behalf.

Summers, *The Individual Employees' Rights Under The Collective Agreement: What Constitutes Fair Representation?* 126 U.Pa.L.Rev. 251, 256 (1977) (footnote omitted). *Smith v. Hussman Refrigeration Co.*, No. 78–1034 (8th Cir. Jan. 3, 1979).

10. International Brotherhood of Electrical Workers Constitution as of September, 1974. Article XXVII, §§ 1 and 12.

11. *Melvin White v. Remsco Management, Inc. and Local Union No. 1, International Brotherhood of Electrical Workers, AFL CIO*, No. 75–476C(A), Eastern District of Missouri, Memorandum Decision filed January 26, 1976.

that there was an adequate reason for his failure to do so. There being no factual dispute on this point, and in view of our legal conclusion that he was required to exhaust, the summary dismissal is affirmed.