**Mildred N. BRUCE, Plaintiff,**

v.

**K–MART CORPORATION, Defendant.**

**Civ. No. 82–2201.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

July 22, 1983.

Lawrence W. Fitting, of Gean, Gean & Gean, Fort Smith, Ark., for plaintiff.

Robert S. Lindsey and Bruce R. Lindsey, Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On September 7, 1982, plaintiff, Mildred N. Bruce, initiated the instant action against defendant, K–Mart Corporation, pursuant to 29 U.S.C. §§ 1001 *et seq.,* particularly 29 U.S.C. § 1132(a)(1)(B), (e).

Plaintiff is a citizen of the State of Oklahoma. The defendant is a foreign corporation incorporated in, and with its principal place of business in, a state other than Arkansas. The Court has jurisdiction of the parties and the subject matter and venue is properly laid in this district and division.

In her complaint, plaintiff alleges that defendant adopted the Employees' Retirement Pension Plan as amended February 1, 1978, such plan constituting a benefit plan as defined by 29 U.S.C. § 1002(35). Plain-tiff is a claimant under the plan and defendant is the administrator of the plan.

It is undisputed that plaintiff became an employee of defendant on July 14, 1971. On November 8, 1980, plaintiff went on approved medical leave of absence through November 8, 1981, at which time her leave of absence expired in accordance with company policy and her employment was then terminated.

On September 22, 1981, plaintiff was notified that she was not eligible for disability retirement benefits under the plan because "she did not complete 10 years of service with the Company *prior* to the onset of her disability." (emphasis in original)

Plaintiff appealed to the Director of Employee Benefits to reconsider its decision. The appeal was denied.

The facts disclose that plaintiff was under the care of Dr. William G. Lockhart during her medical leave. On August 27, 1981, Dr. Lockhart wrote a letter to defendant stating that Mrs. Bruce was then "totally disabled" and should seek retirement. As noted, the claim was denied solely because plaintiff allegedly "did not complete 10 years of service . . . prior to the onset of her disability."

The pension plan states that disability retirement is available to:

(a) Any employee covered by the Plan who while an Employee becomes totally and permanently disabled after having attained age 50 and completed 10 years of service . . . an employee shall be considered totally and permanently disabled if a medical examiner satisfactory to the Company certifies that as a result of mental or physical disability such employee is prevented from engaging in any occupation or employment for wage or profit, and that such disability is likely to be permanent . . . .

Section III.4(a).

The plan further provides that an employee accrues at least one year of "service" for purposes of determining benefits under Section III when the employee accrues "Employee's Hours of Employment" of

1,000 or more in any year. Section I.19(b), "Hours of Employment," is defined as those hours for which an employee is paid directly or indirectly by the employer and includes paid illnesses, holidays, vacations, and disability. Section I.20(a).

Plaintiff's benefits were denied because, as Mr. Dewenter, Director of Employee Benefits, explained:

> These age and service requirements must be met prior to the date the employee ceased working due to the disability for which the benefit is claimed, *i.e.,* before the onset of the disability. Otherwise, a requirement could be met by deferring a disability determination . . . .
>
> \*   \*   \*   \*   \*   \*
>
> . . . Any other method would involve the difficult, if not impossible, task of attempting to determine a precise point in time when a disability becomes total and permanent . . . .

(Dewenter Affidavit, ¶¶ 4, 5)

The Court advised the parties, by letter of March 14, 1983, that the Court intended to rely upon the above facts.

By letter of March 25, 1983, defendant submitted "observations" and "comments" concerning the above facts. Defendant "suggested" that

> K–Mart fails to see the relevance of whether or not the plaintiff continued to accrue service during the term of her medical leave. The K–Mart plan clearly provides that to be eligible for total and permanent disability retirement an employee must complete 10 years of service *prior* to becoming totally and permanently disabled.[1]

The crucial issue quite clearly is at what point plaintiff became permanently disabled, whether prior to July 14, 1981, or after that date. As to this issue, defendant states:

> If Mrs. Bruce is totally and permanently disabled, then she has been so disabled

since November, 1980, even though Dr. Lockhart states that he "anticipated" that she would recover. The fact that neither she nor her doctors concluded until August, 1981, that her disability was permanent does not now change the fact that it was. If permanency is now present, it was present back in November, 1980, even though not recognized or diagnosed.

Defendant automatically assumes that permanent disability existed as of the first day plaintiff did not work due to her medical leave. This assumption, in light of section III.4, which provides:

> An Employee shall be considered totally and permanently disabled if a medical examiner satisfactory to the Company certifies that as a result of mental or physical disability such Employee is prevented from engaging in any occupation or employment for wage or profit, and that such disability is likely to be permanent . . . ,

creates a "catch-22" situation whereby until one is certified as permanently disabled one is not considered disabled, but as soon as one is certified as permanently disabled, the disability automatically "relates back" to the last day the employee worked, in this case defeating benefits.

In light of the materials submitted, the Court concludes that the decision of the Director of Employee Benefits based upon this assumption (which is nothing more than an irrebuttable presumption) without regard to the facts is arbitrary and capricious.

It is clear and well-settled that judicial review of the actions of trustees of pension plans is limited to determining whether such action has been arbitrary or capricious, or an abuse of discretion. *Bueneman v. Central States, Southeast & Southwest Areas Pension Fund,* 572 F.2d

---

1. We note that defendant admits that plaintiff met her service requirements prior to her *termination.* Mr. Dewenter's letter of September 22, 1981, admits that plaintiff is eligible for life income. The eligibility requirements for the life income benefit are set forth in section III.2 of the plan. Section III.2 provides: "Any Employee . . . who has either attained age 50 and completed 10 years of service, . . . may retire at any time thereafter."

1208 (8th Cir.1978). It is also established that it is appropriate to look to the body of federal common law fashioned under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for analogies that may be useful for applications of ERISA under 29 U.S.C. § 1132. *Toland v. McCarthy,* 499 F.Supp. 1183 (D.Mass.1980).

■ Under section 301 of the Labor Management Relations Act, the parties must exhaust all of their claims and defenses, or show adequate reasons for a failure to do so, before litigating a claim in the federal courts. *Rainey v. Missouri Utilities Co.,* 596 F.2d 310 (8th Cir.1979).

■ The Court believes it to be the law under 29 U.S.C. § 1132, as it is under section 301 of the Labor Management Relations Act, that exhaustion is not required where such exhaustion would be futile, *i.e.,* where a claimant would not receive a fair hearing. *Fizer v. Safeway Stores, Inc.,* 586 F.2d 182 (10th Cir.1978). A logical corollary of this rule is that a remand will not be ordered where such a remand would be futile. As defendant admits that it unfailingly deems an employee totally and permanently disabled as of the first day the employee takes approved medical leave, an irrebuttable presumption the Court finds to be arbitrary and capricious and without any basis in fact, it would be futile to remand this cause to the trustee for a determination as to when plaintiff became totally and permanently disabled, if indeed she is.

The Court is not aware of any authority which would aid the Court in determining at what point an employee's permanent disability should be deemed to have begun in cases arising under ERISA. However, insurance law can provide a useful guide. As a matter of insurance law, a disability is ordinarily deemed to have its inception when it first becomes manifest or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease, even though the condition may have been present prior to this determination in a latent or undiscoverable phase. 43 AM. JUR.2d *Insurance* § 550, pp. 619–20.

■ We take this general rule of near universal applicability to mean that the *permanency* of a disability is deemed to have its inception when the permanency first becomes manifest or when one learned in medicine can with reasonable accuracy diagnose the disease as being *permanent.*

■ An analogy to the "onset of disability" under the Social Security Act, more particularly, 42 U.S.C. § 423(d)(1)(A), is only partially instructive. The Social Security Act requires only that the disability begin while claimant is insured, not that the disability be diagnosed during the relevant period. *Taylor v. Harris,* 505 F.Supp. 153 (E.D.Tex.1981). The disability runs from "the day the disability began." *Cassel v. Harris,* 493 F.Supp. 1055 (D.Colo.1980). However, under the Social Security Act, there is no requirement that the disability be "permanent," but only that the claimant be unable to engage in substantial gainful activity which can be expected to last for a continuous period of at least 12 months. The issues in a Social Security Act proceeding are whether, at the time of application for benefits, the claimant is disabled and, if so, whether the disability is expected to last for 12 months.

■ Thus, the appropriate analogy to the Social Security Act would require only that plaintiff be permanently disabled as of the date of filing her claim and that the onset of the *permanence* of the disability manifest itself after the ten-year service requirement has been met.

As noted, one of defendant's objections to this construction is that this construction "would involve the difficult, if not impossible, task of attempting to determine a precise point in time when a disability becomes total and permanent . . . ."

This "administrative convenience" argument is not persuasive. Hundreds of Workers' Compensation judges are faced daily with the question as to when a "temporary total" disability becomes a "permanent partial" disability. Here, we merely have a similar situation, *i.e.,* when plaintiff's tem-

porary condition became a permanent disability. This is not so difficult that the trustee is justified in utilizing a conclusive presumption that the permanence had its onset on the first day a claimant takes medical leave.

Defendant's other objection, *i.e.,* that this construction "would allow a claimant to defer a disability determination" until the service requirements had been met is equally unpersuasive. This is not the Court's holding. The Court's holding is that plaintiff is to be considered permanently disabled as of that date when the permanency first became manifest or the date on which the permanency was medically diagnosed with reasonable certainty as having begun.

This construction precludes a claimant from delaying the diagnosis as to the onset of permanence so as to meet the service requirements, while at the same time precluding the defendant from automatically deeming the permanent disability to have arisen the first day the claimant was absent from work regardless of the facts, precluding claimant from meeting the service requirement. The Court's approach as set forth above balances the competing interests of the parties, is based upon facts rather than assumptions and presumptions, and is more consistent with areas of law dealing with similar types of issues.

■ The issue has arisen whether this Court may make its own determination of the date of onset of permanence of plaintiff's disability or must remand the cause for such determination in light of the foregoing. Although remand is the usual procedure, for the reasons set forth below, the Court will make its own determination of the date of onset of permanent disability.

First, we note that both parties have moved for summary judgment and the facts and exhibits pertinent to this issue are not disputed or controverted.

Secondly, 29 C.F.R. § 2560.503–1(b) provides:

(b) *Obligation to establish reasonable claims procedure.* Every employee bene-

fit plan shall establish and maintain reasonable claims procedures.

(1) A claims procedure will be deemed to be reasonable only if it:

    \*    \*    \*    \*    \*    \*

(iii) Does not contain any provision, and is not administered in a way, which unduly inhibits or hampers the initiation or processing of plan claims . . .

29 C.F.R. § 2560.503–1(f) provides:

(f) *Content of notice.* A plan administrator . . . shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

  (1) The specific reason or reasons for the denial;

  (2) Specific reference to pertinent plan provisions on which the denial is based;

    \*    \*    \*    \*    \*    \*

29 C.F.R. § 2560.503–1(h)(3) provides:

The decision on review shall be in writing and shall include specific reasons for the decision written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent plan provisions on which the decision is based.

Thus, quite clearly the law required defendant to set forth all of the reasons for the denial of plaintiff's claim and all of the specific plan provisions upon which the denial was based, and the procedure employed by defendant is required to be administered in a manner which does not unduly hamper the processing of plaintiff's claim. Only if these requirements are met can the plan be deemed "reasonable" and in compliance with law. 29 C.F.R. § 2560.503–1(b).

Defendant obviously failed to comply with 29 C.F.R. § 2560.503–1(f) in that the sole reason given for the denial of plaintiff's claim was that "she did not complete 10 years of service with the Company prior to the onset of her disability." No mention was made of the permanency or totality of her disability, yet both issues are now adamantly argued by defendant in this Court in favor of affirmance of the trustee's decision or for remand. The Court finds this procedure allowing the raising of new is-

sues on review by this Court and requiring piecemeal litigation "unduly inhibits or hampers the initiation or processing of plan claims." 29 C.F.R. § 2560.503–1(b)(1)(iii). Having deliberately bypassed consideration of the date of onset of plaintiff's permanent disability, defendant is in no position to argue that since its "service requirement" argument failed, the permanency issue should be remanded to it for consideration.

▮ Apart from 29 C.F.R. §§ 2560.503–1(b)(1)(iii), (f)(1), (2), and (h)(3), the concepts of judicial economy, prompt adjudication of claims, and fundamental fairness to claimants require that all defenses or objections to pension claimants be considered by the pension plan trustee prior to federal court review. Multiple reviews and remands are costly and lengthy, both for the claimants and the courts.[2]

▮ The record, so much as relates to the date of onset of the permanence of claimant's disability is complete.

Plaintiff's affidavit states:

... on or about August 27, 1981, and after therapy and general intervening medical examinations by Dr. Lockhart, a determination was made by him that I would be unable to return to work with the defendant or from engaging in any occupation, and that such disability was likely to be permanent.

\* \* \* \* \* \*

... at the time I entered the hospital on November 8, 1980, I was not in a disabled condition and had every hope of returning to active employment with the defendant corporation upon my recovery and rehabilition.... it was not until subsequent medical and physical developments that it was determined that I would not be able to return to active employment with defendant corporation.

(Plaintiff's affidavit, pp. 2–3).

Dr. Lockhart's letter to defendant's Personnel Director of August 27, 1981, states:

Mrs. Bruce was seen in follow up examination in my office today.

With her job situation as described at K-Mart and the fact that she has surgery on the cervical spine and lumbar spine, I do not think we can anticipate her returning back to an employable situation and I feel she is totally disabled. She should seek retirement.

In light of the materials submitted, the Court concludes that plaintiff became permanently disabled as of August 27, 1981. Only then did the permanency of plaintiff's disability first become manifest such that it could be said with a reasonable degree of medical certainty that the disability was likely to be permanent.

Merely because plaintiff did not return to work after November 8, 1980, but instead chose to remain on an approved leave of absence does not even intimate that plaintiff became permanently disabled as of that date. Plaintiff's affidavit states clearly that she did not consider herself disabled as of the time she entered the hospital. Accordingly, the Court concludes that plaintiff completed ten years of service prior to becoming permanently disabled. Any other conclusion would be arbitrary, capricious, and without any basis in fact. We agree with defendant that this determination "should be made in the first instance by the Company and not by the Court." However, as defendant had the opportunity to make this determination "in the first instance," but failed to do so although the record was sufficient for it to do so, and because the material facts are not in dispute, judicial economy and fairness to the claimant militate against remanding the issue to the company for further consideration.

▮ The question remains, however, whether plaintiff's permanent disability is "total" within the meaning of section III.4 of the plan. That section provides:

An employee shall be considered totally and permanently disabled if a medical examiner ... certifies that as a result of

---

**2.** For an eloquent critique of piecemeal litigation in social security disability claims, *see Nixon v. Sec. Health and Human Services,* 80–2149

(W.D.Ark. May 26, 1983) (Magistrate's Proposed Findings).

 

mental or physical disability such Employee is prevented from engaging in any occupation or employment for wage or profit. . . .

Thus, the plan requires that an employee become unable to engage in any employment for wage or profit in order to be eligible for disability retirement.

Although Dr. Lockhart's letter of August 27, 1981, stated, "I do not think we can anticipate her (plaintiff) returning back to an employable situation and I feel she is totally disabled," on that same date Dr. Lockhart evaluated plaintiff's disability as "Class 4—Moderate limitation of functional capacity, capable of clerical/administrative (sedentary) activity. (60–70%)." (Attending Physician's Statement in connection with K–Mart's group life policy). In his affidavit, Dr. Lockhart stated that plaintiff's "disability was likely to be permanent" with respect to being "required to work at the K-Mart Corporation with her hands above her head for extended periods of time looking upward and doing a considerable amount of lifting and bending." (Affidavit of Dr. Lockhart, February 17, 1983).

This issue, too, should have been fully developed below, but because the facts as to whether plaintiff's permanent disability was "total" within the meaning of section III.4 of the plan are in dispute, and because the issue was not properly addressed below by either party, the Court is not in a position to decide the issue as it has above with respect to the onset of plaintiff's permanent disability. Only one reasonable conclusion can be drawn that plaintiff met the service requirements before becoming permanently disabled. However, as the same cannot be said of the "totality" of plaintiff's disability, the Court has no choice but to remand this issue for further consideration. Both parties are to be given an opportunity on remand to submit any additional materials relevant to whether plaintiff is unable to engage in any occupation or employment for wage or profit.

The procedure employed on remand must comply strictly with 29 C.F.R. § 2560.503–1 so that this Court may have a full and complete record to review in the event such review is necessary.

A separate order remanding this cause to the trustee will be concurrently entered.