John D. MOON, Plaintiff,

v.

Donald F. WHITE, III, and Unum
Life Insurance Company of
America, Defendants.

No. Civ. 1–92–0487 (jury).

United States District Court,
E.D. Tennessee,
at Chattanooga.

Sept. 16, 1993.

Arthur P. Brock and William R. Dearling, Stophel & Stophel, Chattanooga, TN, for plaintiff.

Kenneth R. Starr, Chattanooga, TN; Elaine B. Winer, Rice, Kreitzer and Winer, P.C., Chattanooga, TN, for defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

This civil action is before the court for consideration of the defendants' motions for summary judgment. The defendant UNUM Life Insurance Company of America (UNUM) filed its motion [doc. 6; supporting brief, doc. 7] on February 10, 1993. The plaintiff, relying on an extension of time granted by the court, responded [doc. 13] on April 19, 1993. As part of his response, the plaintiff moved for leave to amend his complaint.

The defendant Donald F. White, III (White) filed his motion for summary judgment [doc. 14; supporting brief, doc. 15] on April 28, 1993. The court allowed the plaintiff an extension of time, through May 31, 1993, within which to respond. The court heard the arguments of counsel on June 1, 1993, and took the motions under advisement in light of the fact that the plaintiff's response to the second motion for summary judgment was not due until just before the argument. Having reviewed the briefs and other materials submitted by the parties, including materials submitted after oral argument, the court is now prepared to rule on these motions.

The plaintiff John D. Moon (Moon) commenced this civil action in the Circuit Court for Hamilton County, Tennessee by filing his complaint on September 1, 1992. The defendant UNUM removed it to this court, both on the ground that it is governed at least in part by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. (ERISA), see Metropolitan Life Insurance Company v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and on the ground of diversity of citizenship. The plaintiff does not challenge this court's jurisdiction of the subject matter of this civil action, and concedes that his claim against UNUM is governed by ERISA.

In his complaint, Moon alleges that he became disabled from performing his work as a stockbroker on February 10, 1988, that the defendant White, a longtime friend, was an agent of the defendant UNUM, that the UNUM policy under which he claims disability insurance benefits in this litigation was in effect at the time of his disability, that he gave notice to White of his disability "[a]round May of 1988", and that White advised him that he did not have a disability insured by the UNUM policy or by another policy not in issue here. Moon says that White misinformed him, and that White neither submitted a claim on his behalf nor contacted either of the insurers for him.

As a result of these alleged errors and omissions, Moon says, he suffered emotional distress, and was forced into bankruptcy. He seeks damages against White on theories of negligence, negligent misrepresentation, professional negligence, fraud, and constructive fraud. In his original complaint, Moon seeks damages against UNUM on the theory that White was its agent when he committed his alleged errors and omissions, and also sues UNUM for breach of contract for its denial of his claim for disability insurance benefits.

Some of the facts shown by the record before the court are as follows. The plaintiff was working as a stockbroker employed by J.C. Bradford & Co. in February, 1988. The disability insurance in issue here was part of the employee welfare benefit plan sponsored by the plaintiff's employer. UNUM was the

underwriter of this disability insurance until July 1, 1990.

On February 26, 1992[1], Moon, through counsel, applied to UNUM for disability insurance benefits. In his application, Moon stated that he had been unable to work because of his disability since February 10, 1988, and that he was first treated for his illness or injury on February 11, 1988. He stated that he had returned to work on a part-time basis on April 10, 1988. On the line provided to describe the first symptoms of his illness and the nature of it, Moon wrote, "Stress/alcoholism."

According to the employer's report of claim dated April 15, 1992, and filed in support of his claim, the plaintiff last worked for J.C. Bradford & Co. on February 2, 1989.

Attending physicians' statements submitted in support of the plaintiff's claim indicated that whether he was totally disabled was unknown according to one physician, that his disability continued to August, 1991 according to another, and that he recovered for the purposes of his occupation on August 20, 1989 according to a third. One physician stated February 11, 1988 as the date on which Moon became totally disabled. Another stated June 27, 1989 as such date.

As stated above, Moon submitted his application for disability insurance benefits, or at least the first part of it, on February 26, 1992. UNUM received this application on February 28, 1992. An authorization to obtain medical records and information accompanied this application. On April 20, 1992, UNUM received additional material in support of this application, including the employer's report of the claim dated April 15, 1992. On May 8, 1992, UNUM received the written statements from the attending physicians, which completed Moon's application for benefits.

UNUM denied Moon's claim for disability insurance benefits on the ground that it had not been submitted by the deadline set by the policy. The plaintiff requested and obtained review of this decision, but the insurer did not change its position. There is no contention in this case that Moon did not comply with the applicable plan procedures in submitting his claim, the issue of the timeliness of it aside. In response to the claim, UNUM stated clearly its denial, and the policy language on which it relied. The plaintiff does not contend that UNUM failed to comply with the requirements of 29 U.S.C. § 1133 in according him a right of review, and in advising him of the denial of his claim.

I

The policy which UNUM says applies in this case requires written notice of a disability claim within 30 days of the date disability starts, if possible, and if not possible, then "as soon as it is reasonably possible to do so." The policy requires a proof of claim "no later than 90 days after the end of the elimination period." The "elimination period" is 180 consecutive days of the insured's disability, beginning on the first day of disability.[2]

The policy's proof-of-claim section continues,

If it is not possible to give proof within these time limits, it must be given as soon as reasonably possible. But proof of claim may not be given later than one year after the time proof is otherwise required.

UNUM says that the last sentence of this provision in effect sets a deadline for submitting a proof of claim of 180 days plus 90 days plus one year after the onset of disability. Moon did not meet this deadline, even if the later date of onset found in one attending physician's statement, June 27, 1989, is used as the starting point.

This policy differentiates between notice of a claim and proof of claim. It allows UNUM a period of time after receipt of written notice of a claim within which to provide claim forms. However, even if the date of UNUM's receipt of its first notice of Moon's claim, February 28, 1992, is used as the date

1. This is the date of Moon's attorneys' letter to UNUM.

2. The policy also provides, "If disability stops during the elimination period for any 14 (or less) days, then the disability will be treated as continuous. But days that the insured is not disabled will not count toward the elimination period."

on which Moon made proof of his claim, this lawsuit did not come before the deadline of 180 days plus 90 days plus one year.

Moon opposes UNUM's motion for summary judgment on three grounds. He argues that the policy on which UNUM relies is not the applicable one, because the amendment of the policy by the substitution of a new policy effective January 1, 1988 did not, Moon argues, become effective in his case. Second, Moon argues that the only summary plan description (SPD) delivered to him does not warn that failure to submit a proof of claim within the time limit stated in the policy might lead to a loss of benefits.

Third, Moon argues that even if the version of the policy on which UNUM relies, the one which was substituted for the former one effective January 1, 1988, applies in this case, UNUM's construction of it is incorrect. Moon says that the correct reading of this policy is that the insured must submit a proof of claim as soon as reasonably possible, and that late submission of a proof of claim does not require denial of the claim. As an alternative argument, Moon says that the policy is ambiguous, and that the doctrine of construction of *contra proferentem* should be applied in this case in his favor.

■ Taking up the first issue first, the policy on which UNUM relies in moving for summary judgment includes an amendment which states that the policy attached to the amendment replaces the entire policy effective January 1, 1988. The amendment states also, "This change only applies to disabilities which start on or after the effective date." The actual date of the amendment, as opposed to its effective date, is February 19, 1988.

The policy replaced by this amendment, in the version on which Moon relies, contains, in a rider stated to be effective January 1, 1979, a provision which states,

Policy changes to the employer's plan of insurance will not apply to any insured employee who is absent from work because of a sickness or injury. In this event, the policy changes will become effective on the first day that the employee returns to full-time active work in an eligible class.

Concerning the issue of submitting proofs of claims, this policy states,

Written proof covering the occurrence, the character, and the extent of loss must be furnished to the Company within 90 days after the termination of the period for which the Company is liable. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible.

Viewing the evidence in a light most favorable to Moon for the purpose of considering this issue, he became disabled on February 10, 1988, and his disability continued to August, 1991, according to one of the attending physicians who submitted statements to UNUM. Assuming such a period of disability, Moon commenced his lawsuit within the maximum three-year period stated by the policy on which he relies. Therefore, if this were the applicable policy, an issue of fact concerning whether he made a claim "as soon as reasonably possible" would be presented. This is not an issue subject to summary adjudication.

In reply to Moon's response, however, UNUM shows that the version of the policy on which Moon relies was amended before the amendment effective January 1, 1988, and therefore before the onset of Moon's alleged disability. The long-term group disability insurance policy issued by UNUM to J.C. Bradford & Company and in effect on December 31, 1987 contains the following language:

Written proof concerning the occurrence, the character, and the extent of loss must be furnished to the Company within 90 days after the termination of the period for which the Company is liable. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event later than one year from the time proof is otherwise required.

As stated above, this language came into the policy before the onset of Moon's alleged

disability, and so there is no reason why the policy language quoted further above concerning the delayed effectiveness of any policy change promulgated during an insured's absence from work due to sickness or injury would prevent it from being effective in this case. Similar language delaying the effectiveness of any policy change is in the only summary plan description (SPD) concerning the group disability insurance which Moon says he received. If the provision quoted immediately above is the applicable policy language, it required Moon to submit a proof of claim no later than 90 days plus one year after the termination of his disability. Accepting for the purpose of this argument the one attending physician's statement that Moon's disability lasted until August, 1991, he met this deadline.

This is even more true if one accepts the affidavit testimony of Mark W. Peterson, M.D., who says that Moon, his patient, suffered a disability directly related to alcoholism during the period that he treated Moon, which lasted through 1991. Moon himself testified at his deposition that he considers his disability to be ongoing even now.

The policy in effect on December 31, 1987 contains the same language as that quoted above concerning the delayed effectiveness of any policy change promulgated during an insured's absence from work due to sickness or injury. Therefore, if one accepts Moon's view of the facts, that he became disabled on February 10, 1988, while the policy in its form as of December 31, 1987 was in effect, there is an issue of fact whether Moon submitted a proof of claim as soon as reasonably possible. There is also an issue of fact concerning when Moon's disability (assuming its existence) ended, because if it ended more than 90 days plus one year before he submitted a proof of claim, then the language of the policy in effect on December 31, 1987 would bar this lawsuit.

The court cannot rule as a matter of law that the policy amendment effective January 1, 1988 provides the controlling language, because if Moon was absent from work due to sickness or injury beginning on February 10, 1988, before this policy amendment was signed on February 19, then the pre-existing policy language prevented him from becoming subject to the new policy language, including the proof-of-claim language on which UNUM relies, until "the first day that [Moon] return[ed] to full-time active work in an eligible class." The court recognizes, as UNUM argues, that ERISA does not mandate that benefits under employee welfare benefit plans, as opposed to pension benefit plans, be vested, *Musto v. American General Corporation*, 861 F.2d 897, 901 and n. 2 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989), and that therefore even retroactive amendments of group insurance policies are not prohibited merely because those policies form ERISA plans. That ERISA does not mandate vesting of rights under a welfare benefit plan does not mean that there cannot be an enforceable intention expressed in policy language to vest a right or to delay effectiveness of policy changes under certain conditions. *See International Resources, Inc. v. New York Life Insurance Company*, 950 F.2d 294, 301 (6th Cir.1991), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992). What makes a difference in this case is the plain language of UNUM's policy which prevented any policy change from becoming effective with respect to an employee while he or she was away from work due to sickness or injury. Giving effect to a backdated amendment like the one on which UNUM relies here would permit the insurer to nullify the protection granted by this plain language with respect to any employee away from work for one of the specified reasons for a period of time beginning after the effective date of the amendment and ending after the actual date of the amendment. The court's duty to enforce the plain language of the policy prohibits it from allowing any such nullification of this clearly expressed provision for the delayed effectiveness of policy changes.

If, however, Moon was not, on February 19, 1988, away from work due to sickness or injury within the meaning of the version of this policy in effect on December 31, 1987, then the version of the policy on which UNUM relies became effective in his case. This is an issue of fact. Furthermore, even

if Moon was away from work on February 19, 1988 for one of the specified reasons, the policy language quoted above made the version of the policy on which UNUM relies applicable to him on the first day he returned to full-time active work for J.C. Bradford & Co. There is evidence on the basis of which a trier of fact might find that Moon did return to such work at his employer's Nashville office in April, 1988, after which he worked for the same employer in Asheville, North Carolina. If the trier of fact were so to find, it might also conclude that when the version of the policy on which UNUM relies became applicable to Moon, the time for submitting a proof of claim began to run, and ran out before Moon made UNUM aware of his claim. The court cannot make either this finding or this conclusion on the basis of the record before it.

Moon argues that a welfare benefit plan beneficiary has some vested right in the proof-of-claim provisions applicable at the time his or her disability commences, even if he or she has no vested right in the benefits provisions, but there is no authority to support any such rule. If Moon could not, for example, have prevented the termination of the UNUM group disability insurance policy at any time during his tenure with J.C. Bradford & Co., then he could not have prevented changes in the policy's proof-of-claim and other provisions, absent some right granted him by the policy itself.

 The court is aware of the applicable law, under which review of a plan administrator's denial of benefits is *de novo* on the record which the administrator reviewed. *See Perry v. Simplicity Engineering, a division of Lukens General Industries, Inc.*, 900 F.2d 963 (6th Cir.1990). The court's reading of a plan must be the most reasonable interpretation of it, and the court must read the plan in its entirety, so as not to construe any provision out of its context. *See Aubrey v. Aetna Life Insurance Company*, 886 F.2d 119 (6th Cir.1989). Applying these precepts, the court perceives several issues of fact not susceptible to summary adjudication, all of which arise out of the issue of which policy applies in this case. To summarize the discussion to this point, these issues are as follows:

(1) Did Moon become disabled within the meaning of any of the group disability insurance policies issued by UNUM to J.C. Bradford & Co.?

(2) If Moon did become disabled within the meaning of any of these policies, when did his disability commence?

(3) If Moon did become disabled within the meaning of any of these policies, when did his disability cease (if it did cease)?

(4) Was Moon away from work due to sickness or injury on February 19, 1988 (in which case the policy in effect on December 31, 1987 remained applicable to Moon's case until he returned to "full-time active work")?

(5) If Moon was away from work due to sickness or injury on February 19, 1988, when did he return to full-time active work for J.C. Bradford & Co., if he did (in which case the policy in effect as of January 1, 1988 became applicable to his case)?

(6) Regardless of whether the December 31, 1987 or the January 1, 1988 version of the policy applies in this case, did Moon give proof of his claim to UNUM "as soon as reasonably possible"?

(7) If the December 31, 1987 version of the policy applies in this case, did Moon give proof of his claim to UNUM within 90 days after his disability ceased (if it did cease)?

(8) If the January 1, 1988 version of the policy applies in this case, did Moon give proof of his claim to UNUM within 270 days plus one year after he became disabled?

With all of these issues unresolved, the court cannot grant UNUM's motion for summary judgment. The court can, however, state for the guidance of the parties in this litigation the conclusions which the court is able to reach as a matter of law on the basis of the record now before it. First, the court finds that the dispute in this case concerning which UNUM disability insurance policy applies is limited to the policies in effect on December 31, 1987 and on January 1, 1988.

UNUM has shown conclusively that the earlier version of the policy relied on by Moon in his initial response to UNUM's motion for summary judgment was amended or replaced before the onset of Moon's claimed disability, no matter which date of onset of disability the court accepts.

█ Second, if Moon did not submit a timely proof of claim under the version of the policy applicable in his case, the court will be compelled to hold for UNUM. The court rejects Moon's argument that because neither policy states explicitly that failure to file a proof of claim by the stated deadline will bar the insured's claim, this is not the result which follows from missing the deadline.

The policy effective as of January 1, 1988 states that "proof of claim must be given to the Company," and that proof of claim may not be given after the stated deadline. The earlier policy states that proof of loss "must be furnished" by a certain deadline, and that failure to meet this deadline "shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time," *provided* that proof of loss is submitted "as soon as reasonably possible and in no event later than one year from the time proof is otherwise required."

It is difficult to imagine any reading of these provisions other than UNUM's readings of them which would not render the stated outside time limitations superfluous or nonsensical. Under the more recent version of UNUM's policy, if the phrase "otherwise required" in "one year after the time proof is otherwise required" does not refer to the time limitation of "90 days after the end of the elimination period" in the immediately preceding subsection, as does the phrase "these time limits" in the immediately preceding sentence, then both the limitation of 90 days after the end of the elimination period and the outside limitation of one year later would be subordinate to the indeterminate limitation of "as soon as reasonably possible". A similar problem would be presented if the court were to accept Moon's construction of the earlier version of this policy.

Furthermore, the court cannot draw any inferences in Moon's favor from the fact that neither policy states in its termination-of-benefits provisions anything about whether failure to submit a timely proof of claim bars the claim. There is no logical reason why a provision stating the circumstances under which insurance benefits never become payable would be stated in the same place as a provision stating the circumstances under which benefits already payable will cease to be paid.

Terms in plans are construed without deferring to either party's interpretation and in accordance with established canons of contract interpretation. With the goal of giving effect to the parties' true intent, a court gives the terms of the Plan the common and ordinary meaning that a reasonable person in the position of an employee would give them. Stated another way, plans are to be construed according to their plain and ordinary meaning in the absence of an ambiguity. The plain meaning of written terms is not to be supplanted with contrary interpretations of the parties. Another basic canon is that a term is interpreted in harmony with other terms in the instrument. The meaning of a contract should not be determined from looking only at a single or isolated provision. Courts are not to rewrite or insert terms that impart an intent for the agreement that was never expressed at the time of execution.

*Christie v. K–Mart Corporation Employees Retirement Pension Plan,* 784 F.Supp. 796, 802–803 (D.Kan.1992) (citations omitted). The court concludes, applying these canons of construction, that a reasonable person in Moon's position would understand the proof-of-loss provisions in the two policies in issue to state outside time limits for submitting proofs of loss, and would understand these time limits, like statutes of limitations, to bar claims submitted too late. *See Christie, supra* (claimant barred by failure to submit her application for disability benefits and medical evidence of total and permanent disability within 12 months after the commencement of her alleged disability).

█ For this reason, this is not the case in which to consider whether this circuit

should apply the rule of construction of *contra proferentem* to welfare benefit plans governed by ERISA. The rule is invoked only upon a finding of an ambiguity in the plan being construed, *see generally Phillips v. Lincoln National Life Insurance Company*, 978 F.2d 302 (7th Cir.1992), and neither policy's proof-of-loss provision is ambiguous.[3]

▮ Moon's argument that because the SPD given to him said nothing about a claim being barred in the absence of a timely filing of a proof of claim, that is not the effect in this case, presents more difficulty. In the only SPD which Moon says that he received, all that is stated on the subject is, "We must receive proof that you are totally disabled...."

The SPD for the policy effective as of January 1, 1988, in contrast, summarizes this policy's proof-of-claim provisions accurately. It advises the insured that he or she must submit proof of his or her claim "no later than 90 days after the end of the elimination period," and as soon as reasonably possible if it is not possible to comply with this limitation period of the elimination period plus 90 days, "[b]ut you may not give proof later than one year after the time it is otherwise required." UNUM has shown that it delivered copies of this SPD to J.C. Bradford & Co. for distribution to the latter's employees in March, 1988, but Moon denies that he received a copy of this SPD.

As Moon points out, assuming that J.C. Bradford & Co. distributed this second SPD in March, 1988, this was after the beginning of what he characterizes as an absence from work due to sickness, in which case the effectiveness of the policy changes summarized in the SPD was delayed. Furthermore, in considering UNUM's motion for summary judgment, the court must resolve all reasonable doubts in Moon's favor. For these reasons, while the court will not, as Moon urges it to do, strike the evidence of the second SPD from the record, neither will the court resolve this issue on the basis of the second SPD.

The deficiency of the first SPD is that it says nothing about the proof-of-claim deadlines, not that it conflicts with the language of the policy. This distinguishes *Edwards v. State Farm Mutual Automobile Insurance Company*, 851 F.2d 134 (6th Cir.1988), on which Moon relies, because in *Edwards*, the court found the language in the SPD, which, contrary to the policy language, counted time on sick leave in calculating eligibility for retirement disability benefits, "obviously misleading." The rule in this circuit that in the event of a conflict between an ERISA plan and its SPD, the latter controls, does not help Moon, because there is no such conflict in this case, only silence.

Part of the requirement of 29 U.S.C. § 1022(a)(1) is that the SPD "be sufficiently accurate and comprehensive to reasonably apprise ... participants and beneficiaries of their rights and obligations under the plan." Moon has not cited any authority to establish that a SPD which is silent on the subject of proof-of-claim deadlines fails to satisfy the statute's comprehensiveness requirement. In the applicable regulations, 29 C.F.R. § 2520.102-2(a) repeats the statutory comprehensiveness requirement almost verbatim. In § 2520.102-3(1), the regulations require a SPD to include "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture or suspension of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide" in light of the SPD's description of benefits. Section 2520.102-3(s) requires the SPD to include "[t]he procedures to be followed in presenting claims for benefits under the plan...."

▮ However, as UNUM points out, the statutory duty to distribute a SPD which complies with the applicable law falls on the plan administrator, 29 U.S.C. § 1021(a)(1), which in a case such as this is generally the plan sponsor, i.e., the employer. *See* 29 U.S.C. § 1002(16). *Compare VanderKlok v. Provident Life and Accident Insurance Co., Inc.*, 956 F.2d 610, 617–18 (6th Cir.1992)

---

3. "The issue of whether a contract is ambiguous is one of law for the court to decide." *Christie v. K–Mart Corporation Employees Retirement Pen-*

*sion Plan, supra*, 784 F.Supp. at 803 (citation omitted).

(where the plan identified the employer as the plan administrator, the insurer could not be held liable for a penalty under 29 U.S.C. § 1132(c), which concerns an administrator's duty to furnish requested information). While the two policies in issue require UNUM to deliver to J.C. Bradford & Co. certificates for the insured employees, which according to the earlier policy "shall state the insurance to which [each] employee is entitled and shall summarize the provisions of this policy principally affecting the employee," there is no evidence that J.C. Bradford & Co. and UNUM agreed that the latter would undertake the former's statutory plan administration responsibilities.

■ Furthermore, the general rule appears to be that a claimant is entitled to recover damages based on a technical violation of ERISA, such as a violation of these regulatory provisions, only on a showing of bad faith, active concealment of plan provisions, or misrepresentation which induced reliance on a flawed SPD. *See Christie v. K–Mart Corporation Employees Retirement Pension Plan, supra,* 784 F.Supp. at 805–806, and authorities cited therein. Moon has not made any such showing in response to UNUM's motion for summary judgment. There is no evidence that he relied on the SPD which he says that he received to plan when to submit proof of his claim.[4]

■ For the reasons stated, the court concludes that Moon cannot enforce any claimed right against UNUM in this civil action on the basis of the failure of any SPD given to him to advise him of the plan's proof-of-claim deadlines or of the effect of a failure to meet any such deadline. Moon argues that if the court accepts UNUM's position concerning notice and proof of claim, he nevertheless complied with the plan's requirements by giving notice to the defendant White of his disability. Having considered the evidence, however, including Moon's and White's deposition testimony, the court can conclude as a matter of law that White was not UNUM's agent, and that therefore whatever knowledge he had of Moon's condition

and possible eligibility for disability insurance benefits cannot be imputed to UNUM.

The evidence is uncontroverted that White was not the agent or broker of record with respect to the UNUM group long-term disability insurance policy sold to J.C. Bradford & Co., and that he was never employed by or affiliated with the agent or broker of record. White and Moon knew one another from boyhood, and, when they were young men and White was selling insurance for a living, he approached Moon about making a presentation to Moon and others working at J.C. Bradford & Co. concerning some disability insurance product other than the UNUM policy. When Moon agreed to purchase what White was selling, White discovered that due to oversight or clerical error, Moon had never enrolled in the disability insurance plan offered through his employer. White thought it best that Moon apply for disability insurance under the UNUM policy at the same time as he was applying for the insurance sold by White, which appears to have provided supplemental disability coverage. To be helpful (and to consummate his own sale), White, while in Moon's office at J.C. Bradford & Co., obtained a form for applying for the UNUM insurance, and filled it out for Moon's signature while asking Moon for responses to the questions on the form.

Moon, who at the time was ignorant of insurance matters, was happy to let his friend take care of such details for him. White did not represent to Moon that he was an agent or broker for UNUM. Nor is Moon able to point to any evidence that UNUM made any representation which might be understood as having clothed White with some authority on its behalf. There is thus no evidence on the basis of which any trier of fact might find that notice to White was notice to UNUM for any purpose. UNUM being entitled to partial summary judgment on this point, it is unnecessary to address the issue whether Tennessee Code Annotated § 56–6–147, which concerns the agency of insurance agents for insurers and not for insureds, has been preempted by ERISA.

---

**4.** At his deposition, Moon testified that he received a handbook when he went to work for J.C. Bradford & Co., that he does not know whether the handbook concerned the UNUM insurance policy, and that he probably did not ever read the handbook.

The final argument raised by Moon against UNUM which the court is able to address on the latter's motion for summary judgment is that UNUM cannot rely on either policy's proof-of-claim provisions to defeat Moon's claim because UNUM has in its claim practices recognized exceptions to its readings of these policies. Moon relies on a portion of its general claims procedure guidelines produced by UNUM in this litigation, in which the insurer, referring to its policy in effect as of January 1, 1988, states that claims received "beyond the end of the elimination period plus the previously referenced 15 months" are subject to denial, but that "exceptional circumstances" might occasionally "justify further inquiry and ultimate acceptance of a claim." The guideline calls for consideration of the amount of time by which the claimant missed the proof-of-claim deadline, the reason for missing the deadline, and the nature of the claimed disability. The guideline states as an example of a late-filed claim which might be accepted a claim filed in the sixteenth month after the end of the elimination period by a paralyzed individual.

Contrary to Moon's argument, this guideline establishes that UNUM's (and the court's) reading of the policy provisions concerning proofs of claim is correct, and is the reading which UNUM has followed with consistency. The guideline allowing relief from the deadline in "exceptional circumstances" would be unnecessary if the "otherwise required" language in the provisions concerning proofs of claim did not state, in the context of the other language in these provisions, a proof-of-claim deadline of 180 days (the elimination period) plus 90 days plus one year.

If instead Moon is arguing that this claims procedure guideline provides the basis for an estoppel in his favor, the court cannot accept this argument. Even assuming that the guideline, which was not an interpretation of the policy communicated to insureds, might provide the basis for an equitable estoppel, *see Kane v. Aetna Life Insurance,* 893 F.2d 1283 (11th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990), Moon has not shown any reliance by him on a guideline unknown to him until after he commenced this lawsuit. Some evidence of such reliance would be required for an estoppel. *See Van Gunten v. Central States, Southeast and Southwest Areas Pension Fund,* 672 F.2d 586, 589 (6th Cir.1982).

To summarize, the court finds too many issues of fact outstanding to award summary judgment in favor of UNUM. The court will, however, if it finds the facts in UNUM's favor, enforce provisions of the applicable policy which require an insured to submit proof of his or her claim by a deadline, or to suffer a loss of the claim. Nothing in any summary plan description or claims procedure guideline justifies a different result. White was not UNUM's agent for any purpose, and there is no basis in this case for an estoppel which might allow Moon to surmount any proof-of-claim deadline which might otherwise work against him under the facts of this case.

## II

In support of his motion for summary judgment, White relies on evidence that Moon was not disabled due to alcoholism or abuse of other drugs during the relevant time period. If Moon was not disabled because of abuse of alcohol or any other drug, White argument goes, then any representation by White concerning whether disability insurance benefits were available could not have been the cause of any loss suffered by Moon. White's other argument in support of his motion is that all of Moon's claims against him are time-barred.

With respect to the issue of proximate causation, Moon has offered in opposition to White's motion affidavit evidence that he did indeed suffer from a disability caused by alcoholism during the relevant time period. With such opposing evidence in the record, the court cannot award summary judgment in White's favor on this ground.

As for White's limitations argument, he says that Moon's claim for damages for alleged economic losses, i.e., the lost disability insurance benefits and financial losses stemming from his inability to recover such insurance benefits, which claim is based on theories of negligence and fraud, is controlled

by the three-year limitation period stated in Tennessee Code Annotated § 28–3–105. White says that Moon's claim for damages for emotional distress is controlled by the one-year limitation period stated in T.C.A. § 28–3–104(a).

Moon does not dispute that these are the applicable statutes of limitations. He does argue, however, that his cause of action against White accrued not when they last discussed the issue of disability insurance benefits, in June, 1988, but much later, when he discovered or reasonably should have discovered his cause of action against White. Moon says that this raises an issue of fact which is not subject to summary adjudication.

White argues that there is no tolling of either limitation period in this case, because fraudulent concealment cannot toll the period with respect to a claim based on a theory of negligence, and because, with respect to Moon's claim based on a theory of fraud, the misrepresentation which constitutes fraudulent concealment must concern the existence of a cause of action, as opposed to the underlying assertion on which the claim of fraud is based, e.g., the unavailability of disability insurance benefits in an alcoholic's case. In response to White's motion, Moon states that he is not relying on a theory of fraudulent concealment, but instead is arguing that the accrual of his cause of action was delayed under the discovery rule. Moon also relies on T.C.A. § 28–1–106, which tolls a limitation period during a period of disability if the plaintiff is "at the time the cause of action accrued ... of unsound mind."

White argues that there exists no reported case in which a Tennessee appellate court has applied the discovery rule concerning when a cause of action accrues to a claim involving purely property or economic damage or loss. While it is true that the facts in *Prescott v. Adams,* 627 S.W.2d 134 (Tenn.Ct. App.1981), *permission to appeal denied, id.* (Tenn.1982), revealed an issue of fact concerning whether there had been fraudulent concealment, the court of appeals did not state its holding in such limited terms: "It seems clear, then, that in a suit for damages under T.C.A. § 28–3–105, the cause of action

accrues at the time the injury occurs, or when it is discovered, or when in the exercise of reasonable care and diligence the injury should have been discovered." *Id.* at 138. Furthermore, in *Hill v. A.O. Smith Corporation,* 801 F.2d 217 (6th Cir.1986), a decision which this court is bound to follow, the federal court of appeals, following, *inter alia, Prescott v. Adams, supra,* applied the discovery rule to determine when a claim for damages on a civil conspiracy theory under Tennessee law accrued.

On the basis of these authorities, the court must conclude that when Moon's cause of action against White accrued is an issue of fact which is not subject to decision on a motion for summary judgment. Furthermore, the court agrees with Moon that T.C.A. § 28–1–106 creates an issue of fact concerning when this cause of action accrued. This statute provides in pertinent part for tolling the accrual of a cause of action "[i]f the person entitled to commence [the] action is, at the time the cause of action accrued, ... of unsound mind."

White concedes that there is a paucity of case law defining "unsound mind" for the purpose of this statute, and that there is no Tennessee decision which holds that one suffering from alcoholism is of unsound mind for this purpose. White points to the facts that during the relevant time period, Moon worked again for J.C. Bradford & Co. as a broker, and was a petitioner in bankruptcy. There is in the record before the court, however, affidavit evidence that in the opinion of at least one physician who treated Moon during the relevant time period, through 1991, Moon was disabled due to alcohol addiction [*see* doc. 22].

Nothing in this statute limits the court to a construction of "unsound mind" which would accept only an adjudication of insanity or of disability of a nature which would justify the appointment of a guardian or conservator. In *Porter v. Porter,* 22 Tenn. 586, 589 (1842), in applying the predecessor statute, the Tennessee Supreme Court referred to it as a statute in favor of persons *non compos mentis,* and applied it in favor of an individual who due to "extreme old age and mental imbecility," was "incapable of attending to

any business, or of taking care of herself." While the facts of Moon's employment and of his status as a party to bankruptcy proceedings are relevant to the issue of the soundness of his mind during the relevant time period, they are not determinative in the face of conflicting evidence. In this case, as in *Foster v. Allbright*, 631 S.W.2d 147, 150 (Tenn.Ct.App.), *permission to appeal denied*, *id.* (Tenn.1982) (citation omitted), "there [being] conflicting evidence on the issue of the competency of plaintiff on the date the cause of action accrued, there [is] a genuine issue as to a material fact, and summary judgment [is] not in order."

### III

For the reasons stated, the court will grant in part and deny in part the motion for summary judgment of UNUM Life Insurance Company, leaving for trial the issues as narrowed by the court's rulings stated in this memorandum opinion. The court will deny the motion for summary judgment of the defendant Donald F. White, III.

In light of these rulings, the court will grant the plaintiff's motion for leave to amend his complaint.