**BAPTIST MEMORIAL HOSPITAL,**
**Plaintiff,**

v.

**Emma MARSAW, individually and as the Personal Representative of the Estate of David Marsaw, Deceased, Bakery & Confectionery Union & Industry International Health Benefits Fund, Donna Shalala, Secretary of Health and Human Services, and Ford UAW Retiree Program, Defendants.**

No. 95–2241–TUV.

United States District Court,
W.D. Tennessee,
Western Division.

July 9, 1998.

Michael F. Rafferty, Harris Shelton Dunlap & Cobb, Memphis, TN, for Plaintiff.

Emma Marsaw, Chicago, IL, Pro se.

Jeffrey Freund, Anne Ronnel Mayerson, Bredhoff & Kaiser, Washington, DC, Deborah A. Godwin, Agee Allen Godwin Morris, Laurenzi & Hamilton, Memphis, TN, for Defendants.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

TURNER, District Judge.

Pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, *et seq.*, Baptist Memorial Hospital ("BMH") requests that this court declare the rights and obligations of BMH and the Bakery and Confectionery Union and Industry International Health Benefits Fund[1] (the "Fund") with respect to $356,984.57 in hospital charges incurred by David Marsaw, deceased, during a lengthy inpatient admission. Before the court are BMH's and the Fund's cross-motions for summary judgment.

### I. *Summary Judgment Standard*

■ The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or judge its truth; rather, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will determine what issues of fact are material. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

A summary judgment movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986). Once met, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue of triable fact. Fed. R.Civ.P. 56(e). To meet this burden, the non-movant must present sufficient countervailing evidence such that a jury could return a verdict favorable to the non-moving party. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

■ Where the parties have submitted cross-motions for summary judgment, the court addresses "each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). Moreover, the fact that both parties have submitted motions for summary judgment does not require the court to find that no issue of material fact exists. *Id.* (citing *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948)). In short, "summary judgment in favor of either party is not proper if disputes remain as to material facts." *Id.* (citing *Mingus*, 812 F.2d at 1391).

### II. *Background*

The parties do not dispute the following facts. While visiting his sister in Memphis, Tennessee, Mr. Marsaw, a resident of Chicago, Illinois, began experiencing physical difficulties that compelled him to seek medical assistance. On September 12, 1991, Dr. Thomas West admitted David Marsaw to BMH through the emergency department with the principal diagnoses of (1) Parkinson's disease and (2) urinary bladder neck contracture with bladder outlet obstruction, and with the secondary diagnoses of (1) Parkinson's dementia complex; (2) cor pulmonale; (3) subendocardial myocardial injury; (4) respiratory failure; and (5) hyporegenerative anemia. Mr. Marsaw remained hospitalized at BMH until March 4, 1992.

Following three operative procedures, Mr. Marsaw experienced excellent relief from the bladder obstruction and resulting fluid retention. However, over the next several

---

1. Pursuant to this court's prior orders of dismissal from this lawsuit of Donna Shalala, the Ford UAW Retiree Program, and Emma Marsaw in her individual capacity, only BMH's claims against the Fund and Emma Marsaw in her capacity as the personal representative of the Estate of David Marsaw remain. Because BMH agreed to stay its claim against Emma Marsaw in her capacity as the personal representative of the Estate of David Marsaw, the court's order addresses only BMH's claim against the Fund.

months, Mr. Marsaw endured multiple episodes of respiratory failure that required him to spend much of his lengthy hospitalization in the intensive care unit on a respirator. Additionally, Mr. Marsaw's mild confusion, evident at admission, worsened until he became, as his doctor described, "frankly demented."

At the time of his 1991 admission to BMH, Mr. Marsaw possessed three potential sources for health insurance coverage: (1) Medicare, as an individual over age 65; (2) the Ford UAW Retiree Program ("Ford Program"), as a retired employee of the Ford Motor Company; and (3) the Bakery and Confectionery Union and Industry International Health Benefits Fund, as the retired husband of Emma Marsaw, an actively employed Nabisco Brands, Inc. employee. During his emergency admission, with his wife at home in Chicago, Mr. Marsaw, whose dementia limited his ability to convey information, was accompanied only by his sister. They offered medical cards that demonstrated Mr. Marsaw's Medicare and Ford Program coverage, but made no reference to coverage under the defendant Fund. The limited information received by BMH did not even reveal Mr. Marsaw's marriage to Emma Marsaw. During his admission to the hospital, Mr. Marsaw assigned to BMH all of his rights to receive health benefits.

BMH discovered that the Ford Program provided Mr. Marsaw with coverage under a Blue Cross/Blue Shield of Michigan Plan and a Humana Health Maintenance Organization. These benefits, however, would not cover Mr. Marsaw's BMH expenses because the Blue Cross/Blue Shield plan included only vision and dental expenses and BMH was not a participating provider in the Humana HMO. As a result, BMH listed Medicare as Mr. Marsaw's primary payer and submitted claims to the Medicare intermediary, Blue Cross/Blue Shield of Tennessee ("Medicare intermediary"), for reimbursement.

After discovering in November of 1993 that another payer had paid primary health benefits on behalf of Mr. Marsaw to other health care providers, pursuant to federal law [2] the Medicare intermediary denied BMH's claims for reimbursement from Medicare as the primary payer, but did not tell the hospital of the identity of the primary payer at that time. On February 21, 1994, almost two years following the date of Mr. Marsaw's discharge, the Medicare intermediary advised BMH that the Bakery and Confectionery Union and Industry International Health Benefits Fund was the entity that had paid primary benefits on behalf of David Marsaw to other health care providers. BMH immediately contacted the Fund and submitted a claim for Mr. Marsaw's hospital charges. The Fund denied BMH's claim on the grounds that Mr. Marsaw's emergency admission was not certified within 48 hours of admission and because the claim for benefits was made beyond the one-year limitations period set out in the Fund's Summary Plan Description ("SPD").[3] Following BMH's submission of evidence regarding Mr. Marsaw's incapacity during his hospitalization and the resulting inability of BMH to discover the Fund's existence, the Fund's Appeals Committee [4] denied BMH's internal appeal for the reasons originally given. The Fund does not dispute that it would be re-

---

2. Under the "Medicare as secondary payer" provisions of the Medicare program, employee group health plans are generally the primary payers of medical expenses and Medicare is the secondary payer. 42 U.S.C. § 1395y(b).

3. At the time of Mr. Marsaw's hospitalization, the SPD expressly required beneficiaries to offer proof of loss within 90 days of the loss. However, following a consistent practice of requiring proof of loss to be submitted within one year of the loss, the Fund formally amended the SPD to require submission of proof of loss within one year of a loss. The parties do not dispute that the Fund used the one-year rule for evaluating BMH's claim on appeal.

4. The Fund is administered by a Board of Trustees, half of whom are selected from among the employers participating in the Fund and half of whom are selected from among the unions participating in the Fund. The Fund's administrative office staff, which consists of approximately 62 employees, initially reviews benefits claims in light of the Fund's written documents governing the payment of benefits. Following this decision, beneficiaries may appeal denials to the Appeals Committee of the Board of Trustees, consisting of the Fund's Chairman and Secretary. If proper, the Appeals Committee's decisions are then ratified by the full Board of Trustees.

sponsible as a primary payer for Mr. Marsaw's expenses but for the failure to obtain certification following Mr. Marsaw's emergency admission and the failure of BMH to submit proof of loss within the Fund's limitation period.

In this appeal of the Fund's denial of benefits, BMH argues that it should be granted equitable relief from the trustees' decision, because the hospital's lack of knowledge of the Fund's existence and Mr. Marsaw's incompetency during the relevant time period excused the hospital's delay from filing proof of loss within the Fund's limitation period. In support of its position, BMH argues that federal courts are authorized to develop a uniform federal common law to supplement the explicit provisions and general policies set out in ERISA. Based on this premise, BMH encourages the court to follow three Tennessee common law principles from the field of insurance law in the instant case: (1) ignorance of the existence of a policy of insurance will excuse delay in giving notice and furnishing proofs of loss; (2) provisions requiring a timely filing of a proof of loss are liberally construed in favor of the insured; and (3) unless an insurance policy contains an express forfeiture clause for the failure to file proof of loss within a specified time, delay will not result in a loss of benefits, provided the claimant's delay was not the result of his own negligence.

Additionally, BMH seeks to import the common law doctrine of *contra proferentem,* which compels a court to construe ambiguous terms of a written document against the party who selected them. In applying the rule of *contra proferentem* to the instant matter, BMH attempts to demonstrate two ambiguities in the Fund's SPD. BMH first argues that the meaning of the term "loss" in the Fund's SPD is ambiguous, and, therefore, the triggering event for the specified time in which to file a claim, which is the occurrence of "loss," is also ambiguous. Second, BMH contends that the Fund's failure to specify the consequences of failing to submit proof of loss within the SPD's limitation period also creates an ambiguity. Thus, according to BMH, the Fund's trustees abused their discretion by basing their decision to deny BMH's claim on these allegedly ambiguous terms.

BMH further argues that the Fund's policy to pay claims submitted beyond the SPD's limitation period "where the amount in issue is so *de minimis* that the costs of considering an appeal would be greater than the costs of paying the claim" renders its present decision to deny BMH's claim arbitrary.

In response to BMH's contentions, the Fund argues that the trustees' denial of benefits should be reviewed under the arbitrary and capricious standard. The Fund therefore argues that because the Fund trustees, at a minimum, rationally interpreted the SPD's post-emergency admission certification requirement and time limitation for filing claims in denying BMH's claim, the reasons for BMH's delay are irrelevant, in that the court must defer to the trustees' rational interpretations under the arbitrary and capricious standard of review.

III. *Standard of Review for the Trustees's Denial of Benefits*

The parties do not dispute that the Fund is a multiemployer welfare plan subject to the provisions of ERISA. *See* 29 U.S.C. §§ 1002(1), 1002(37)(A), 1003(a). Denials of benefits by ERISA employee benefit plan administrators or fiduciaries are to be reviewed under an arbitrary and capricious standard if the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Perry v. United Food & Commercial Workers Dist. Unions,* 64 F.3d 238, 242 (6th Cir.1995) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). According to the Fund's Trust Agreement, its trustees have: (1) "full authority to determine all questions of nature, amount and duration of benefits to be provided"; (2) "full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same"; and (3) "full authority to determine all claims for benefits." (Bergin Decl. ¶ 2, Ex. 1, at 5–6 (Art. VI)). Although no court within the Sixth Circuit has considered whether the Fund's trustees exercise suffi-

cient discretion to warrant deferential review, in an unpublished decision the United States District Court for the Southern District of Illinois concluded that the Fund's trustees exercised sufficient discretion to justify invocation of the arbitrary and capricious standard. *See Renfro v. Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Fund,* Civ. No. 94–210 (S.D.Ill. Nov. 10, 1994). Moreover, the Sixth Circuit has consistently held that plans with substantially similar discretionary language warrant deferential review. *See, e.g., Johnson v. Eaton Corp.,* 970 F.2d 1569, 1571 (6th Cir.1992) (finding that arbitrary and capricious standard applies where the plan provides that the pension committee " 'shall have all such powers and authority as may be necessary to carry out the provisions of this plan' ") (quoting plan); *Baker v. UMWA Health & Retirement Funds,* 929 F.2d 1140, 1144 (6th Cir.1991) (concluding that abuse of discretion standard applies where plan provides that the trustees " 'shall have full and final determination as to all issues concerning eligibility for benefits' ") (quoting plan); *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989) (finding that arbitrary and capricious standard applies where plan provided that the administrator " 'shall interpret the Plan and shall determine all questions arising in the administration, interpretation, and application of the Plan' ") (quoting plan). Accordingly, the court will apply an arbitrary and capricious standard of review in the instant case.

■ The Sixth Circuit has further explained that the arbitrary and capricious standard "is the least demanding form of judicial review of administrative action .... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Perry,* 64 F.3d at 242. Under this deferential standard, when the parties offer rational but conflicting interpretations of an ambiguous ERISA plan term, the court should defer to the plan administrator's rational interpretation. *See Johnson v. Eaton Corp.,* 970 F.2d 1569, 1572 (6th Cir.1992) (deferring to ERISA plan administrator's reasonable interpretation of ambiguous plan term despite beneficiary's offer of conflicting

reasonable interpretation of same term). Accordingly, to the extent that BMH can show that Fund trustees relied upon ambiguous plan terms in denying BMH's claim, the court will nonetheless defer to the Fund trustees' interpretation if it is reasonable.

### IV. BMH's Alleged Ambiguities in the Fund's Summary Plan Description

### A. The Fund's Limitation Period for Submission of Proof of Loss

■ According to the Fund's SPD, as a condition for the receipt of benefits, proof of loss on which a claim is based must be furnished to the Fund Office within one year of the date of such loss. It is therefore the occurrence of "loss" that triggers the plan's one-year limitation period. BMH argues that the SPD fails to specify when loss occurs for purposes of triggering the limitation period, and, therefore, the trustees' interpretation of loss to mean the date on which service is rendered is an arbitrary interpretation of an ambiguous term. An examination of the terms of the SPD reveals that BMH's argument lacks merit. Under the SPD, hospital expenses are paid only if they are "covered expenses." (Bergin Decl. ¶ 8, Ex. 2, at 25, 37). Thus, a "loss on which a claim may be based" can refer only to a "covered expense." The SPD further provides that a "covered expense is incurred as of: a) in the case of a service, the date the service is rendered, or b) in the case of a supply, the date the supply is purchased." (*Id.* at ¶ 9, Ex.2, at 25). The terms of the SPD therefore not only demonstrate the lack of ambiguity concerning the date on which a beneficiary incurs loss, but, at a minimum, also show the rationality of the Fund trustees' interpretation of the date on which loss is incurred.

### B. Forfeiture of Benefits Due to Failure to Comply with Fund's Limitation Period

■ BMH argues that the SPD fails to specify that noncompliance with the claim limitation period forfeits all benefits for the untimely claim, and, therefore, the trustees' imposition of a complete forfeiture of benefits in the event of an untimely claim is an arbi-

trary interpretation of the SPD. Again, examination of the SPD disposes of BMH's argument. The SPD defines the conditions precedent for the receipt of Fund benefits, and the requirement that proof of loss "must be furnished to the Fund Office" within one year of the loss "logically and unambiguously establish[es] that, under the [SPD], timely submission of proof is a condition precedent to the payment of benefits." *See Cisneros v. UNUM Life Ins. Co. of Am.*, 134 F.3d 939, 943 (9th Cir.1998) ("We also reject [plaintiff's] contention that the [ERISA] Policy failed to provide expressly for forfeiture of benefits in the event of untimely submission of proof. [The Policy] provides that proof 'may not be given' after one year and 180 days ... [and further provides] that benefits will be paid '[w]hen the company receives proof.' Read together, these provisions logically and unambiguously establish that, under the Policy, timely submission of proof is a condition precedent to the payment of benefits."); *Moon v. White*, 909 F.Supp. 1047, 1054 (E.D.Tenn.1993) (finding that even though ERISA policy failed to specify the consequence of noncompliance with limitation period, "a reasonable person in [plaintiff's] position would understand the proof-of-loss provisions in the two policies in issue to state outside time limits for submitting proofs of loss, and would understand these time limits, like statutes of limitations, to bar claims submitted too late"). At the very least, the trustees rationally interpreted the SPD to require forfeiture of benefits for untimely claims.

## V. *The Applicability of Contra Proferentem*

■ The lack of ambiguity in the challenged SPD provisions forecloses BMH's request that the court import the doctrine of *contra proferentem* into ERISA case law. *See Moon*, 909 F.Supp. at 1054 (deciding not to invoke rule of *contra proferentem* because "the rule is invoked only upon a finding of an ambiguity in the plan being construed") (citing *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302 (7th Cir.1992)). However, assuming that BMH could show ambiguity in the SPD provisions it challenges, Sixth Circuit precedent establishes that courts, when

applying the arbitrary and capricious standard of review, should defer to an ERISA plan fiduciary's rational interpretation of an ambiguous term. *See Eaton*, 970 F.2d at 1572 (deferring to ERISA plan administrator's reasonable interpretation of ambiguous plan term despite beneficiary's offer of conflicting reasonable interpretation of same term).

Moreover, the courts of appeals cases relied upon by BMH for the proposition that federal appellate courts have been invoking *contra proferentem* in ERISA cases are specific to scenarios in which the plan documents were drafted by the insurance company that was administering the plan on behalf of the employer. *See Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539–40 (9th Cir.1990) (applying *contra proferentem* to an insurance company-drafted ERISA policy because "an insurer's practice of forcing the insured to guess and hope regarding the scope of coverage requires that any doubts be resolved in favor of the party who has been placed in such a predicament"); *Phillips*, 978 F.2d at 312–13 (relying on *Kunin* and reaching same conclusion). In circumstances in which the ERISA plan is self-funded and plan documents are the product of collective bargaining, the same federal appellate courts have held that *contra proferentem* does not apply, because concerns about unequal bargaining power are eliminated. *See Eley v. Boeing Co.*, 945 F.2d 276, 279–80 (9th Cir.1991) (declining to apply *contra proferentem* when reviewing an ambiguous provision of a self-funded plan resulting from a collective bargaining agreement, and distinguishing *Kunin* as not applying to plans that result from collective bargaining); *see also Phillips*, 978 F.2d at 314 (explaining that *contra proferentem* is inapplicable where the insured is a co-drafter of the policy) (citing *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 639 (7th Cir.1991)); *Taylor v. Continental Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1233–34 (3d Cir.1991) (declining to use *contra proferentem* to review the terms of a self-funded ERISA plan and distinguishing *Kunin* as applying to insurance contracts). Accordingly, to the extent that there is ambiguity in

the SPD terms challenged by BMH, the court should not invoke the rule of *contra proferentem*, but should defer to the Fund trustees' rational interpretation, because the Fund, a self-insured ERISA plan, is the product of collective bargaining. As a result, the court finds that BMH's argument for the application of *contra proferentem* in the instant case lacks merit.

### VI. *The Fund's Payment of Untimely Claims Where the Costs of Considering Appeal Are Greater than Payment of the Claim*

■ The Fund admits that it routinely pays untimely claims where the claim is so *de minimis* that it would be more costly to consider an appeal of the denied claim than to pay the claim. BMH argues that distinguishing between claims on this basis is arbitrary and capricious. The Fund persuasively responds that the interest of preserving Fund assets makes it reasonable to pay untimely *de minimis* claims rather than incur the greater cost of the appeal process. Although the consistent application of plan terms is a legitimate factor when reviewing fiduciary action under the arbitrary and capricious standard, there is no evidence in the record that the Fund has ever paid an untimely claim that exceeded the costs of appeal. *See Cash v. Wal–Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir.1997) (explaining that consistent interpretation of relevant plan terms is relevant to whether ERISA plan fiduciaries' challenged interpretation is reasonable). Accordingly, the court concludes that the Fund's application of its *de minimis* rule in the instant matter is not arbitrary and capricious.

### VII. *The Propriety of Supplanting an Administrator's Rational Interpretation of an ERISA Plan Term Through the Creation of Federal Common Law*

■ The preceding analysis demonstrates that the Fund's denial of BMH's claim arises from rational interpretations of the terms of the SPD. Considering the degree of discretion ceded to the Fund's trustees, *Firestone, supra*, strictly applied, compels the court to defer to the trustees' decision. BMH, however, argues that the court should nonetheless grant it equitable relief from the Fund's denial of benefits considering BMH's complete inability to discover the existence of the plan before the expiration of the SPD's limitation period. Thus, the court reaches the controlling issue in this case: When applying the arbitrary and capricious standard of review, may the court supplant an ERISA plan administrator's rational interpretation of an ERISA plan term through the creation and implementation of an equitable remedy under the auspices of federal common law?

Considering the deference owed to the trustees' decision and the general rule that a federal court may not alter the substantive terms of an ERISA benefits plan unless the challenged term contravenes an ERISA policy, the court must answer this question in the negative. *See Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees*, 740 F.2d 454, 457 (6th Cir.1984) (holding that (1) an employer is free to choose what benefits and terms to include in the plan as long as ERISA law and policy are not violated, and (2) judicial review of denial of benefits is limited "to a determination of whether the trustees' actions in administering or interpreting a plan's provisions are arbitrary and capricious"); *Nazay v. Miller*, 949 F.2d 1323, 1337 (3d Cir.1991) (finding that "the only substantive review a court may make is to ensure that the plan does not violate ERISA's purpose" and reversing the district court's decision to "transplant" into the ERISA setting a common law "notice/prejudice" rule because the ERISA plan's precertification requirement did not violate any "fundamental ERISA-based policy"). While rigid application of the Fund's limitation period may produce a harsh result in this case, by protecting the fiscal stability of the Fund, the Fund's one-year rule nonetheless furthers the fundamental ERISA policy of "enhanced protection" of employee benefits. *Varity Corp. v. Howe*, 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). As Robert Bergin, the Fund's Executive Director, explained in his declaration:

> The one-year rule aids in long-term planning by enabling the Fund to learn rela-

tively quickly whether it has large liabilities that may warrant the establishment of reserves. It also minimizes the extent to which the Fund must pay bad claims due to the inability to properly evaluate their validity because it enables the Fund to make inquiries, relatively contemporaneously with the services provided, into such matters as the consistency of the service provided with the diagnosis and the appropriateness of the particular service.

(Bergin Decl. at ¶ 12). Because the SPD's post-emergency admission certification requirement and time limitation for filing claims do not violate any fundamental ERISA policy, the court will not import BMH's requested equitable remedy to effectively rewrite these legitimate plan provisions. *See St. Joseph Hosp. V. Kansas Bldg. Trades Open End Health & Welfare Trust Fund,* 1988 U.S. Dist. Lexis 17853 at *8–9 (W.D.Mo. Sept. 13, 1988) (upholding trustees' denial of medical benefits due to failure to file within the plan's specified time limit, because "[t]his court 'will not disturb the decisions of administrators of an employee welfare benefit plan such as this unless those decisions were arbitrary and capricious'") (quoting *Agee v. Armour Foods Co.,* 672 F.Supp. 1210, 1217 (W.D.Mo.1986), *aff'd,* 834 F.2d 144 (8th Cir.1987)); *Scheirer v. NMU Pension & Welfare Plan,* 585 F.Supp. 76, 79 (S.D.N.Y.1984) (upholding trustees' denial of benefits under a welfare fund where the claim was not filed by the filing deadline set forth in the plan).

To support the propriety of fashioning an equitable remedy in this case, BMH directs the court to the Seventh Circuit's decision in *Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869 (1997). In *Doe,* the Seventh Circuit applied the doctrine of equitable estoppel to preclude an ERISA governed benefits plan from invoking its limitation period to bar the plaintiff's claim for benefits. *Id.* at 876–77. BMH's reliance on *Doe* is misplaced. Recognizing that "the applicability of estoppel principles in ERISA cases is controversial because ERISA forbids the conferral of benefits other than in accordance with the written ERISA plan," *id.* at 875, the Seventh Circuit explained that the correspondence that served as the foundation for plaintiff's estoppel argument amounted to a written modification of the underlying contract for benefits and, therefore, eliminated the need to look beyond the terms of the plan in granting plaintiff's relief. Writing for the panel, Judge Posner explained:

> We are not even sure that it is necessary to get into considerations of what is equitable. In effect, the defendants offered the plaintiff a tolling agreement of indefinite duration but expiring when settlement negotiations finally broke down, and the plaintiff accepted, thereby binding the defendants. It was a contract embedded within the larger contract constituted by the benefits plan. In such a case the application of the doctrine of equitable estoppel is nothing exotic; it amounts to nothing more than the application of basic contract principles.

*Id.* at 877. As no evidence in the record suggests that the Fund represented to BMH that it would modify its limitation period, the court concludes that the Seventh Circuit's analysis in *Doe* does not affect the court's decision in this case.

VIII. *Conclusion*

For the foregoing reasons, the court finds that there are no genuine issues of material fact regarding the rationality of the Fund's decision to deny BMH's claim for benefits. The court grants the Fund's motion for summary judgment and denies BMH's motion for summary judgment. Accordingly, the court holds that the Fund is not liable under its plan to BMH for the losses incurred by David Marsaw.